WILLIAM JACKLIN, Respondent, *v.* THE NATIONAL LIFE ASSOCIATION
of Hartford, Conn., Appellant.

*Life insurance policy — mental derangement — not necessarily an impairment of
health — no breach of warranty — stipulation as to amount due.*

To what extent mental disturbance will destroy or interfere with the functions of
the body must depend on the circumstances of each case, and is a question of
fact to be solved in each instance by the evidence.

In an application for insurance upon the life of one Venie Jacklin the ques-
tion was asked: "What is the condition of health of your mother?" and the
answer was "sound." At that time her mother was in a lunatic asylum
afflicted with chronic mania, a serious form of insanity, and at times violent,
profane and obscene. A physician testified upon the trial of an action brought
to recover the amount of such policy that at the time of her admission she was
in fair physical condition, and that at the time of the application for insur-
ance she was eating and sleeping well, except when she had periods of mental
disturbance.

*Held*, that the finding of the court that there was no breach of warranty was
proper.

A stipulation had been entered into between the parties that "the sum to be
received on this policy, if anything, is $73.97."

*Held*, that an objection made upon the trial that there was a lack of proof as to
the amount due under the contract was without force.

APPEAL by the defendant, The National Life Association of Hart-
ford, Conn., from a judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of Orange
on the 21st day of February, 1893, upon the decision of the
court after a trial at the Orange County Circuit, with notice of an
intention to bring up for review on such appeal the exceptions filed
to the findings, refusals to find and rulings of the court, and the
order directing judgment.

This action was brought to recover the amount of a life insurance
policy upon the life of Venie Jacklin by her father, the beneficiary
named in such policy.

The opinion of the trial court was as follows:

" BROWN, J. :

" The policy provides for the payment of $100 ' solely from the
funds accumulated from payments of its insured ; ' also, that if such
accumulation on hand shall be insufficient to pay accrued claims, for

an assessment on contracts in force of five per cent on single premium, and if the whole fund from assessments and accumulations is sufficient to pay all claims, it shall be distributed *pro rata*, etc.

" It has been stipulated that ' the sum to be received on this policy, if anything, is $73.97.' In view of this stipulation the point made of a lack of proof of the amount due under the contract is without force.

" Proof of accumulation by the company and the amount that should be realized by an assessment could go no further than the stipulation, and was unnecessary. I think ch. 321, Laws of 1877, is applicable to this policy.

" Such is the clear implication from chap. 328, Laws of 1885, and while it might be a debatable question if the act of 1885 had not been passed, this question does not even admit of serious dispute.

" The point was not presented in *Ronald's Case* (132 N. Y. 378), neither was the act of 1885 called to the attention of the court.

" I am also of the opinion that the question of the breach of warranty must be decided in the plaintiff's favor. The question in substance was : ' What is the condition of health of your mother ? ' and the answer was, ' sound.'

" The mother was then in the Binghamton Lunatic Asylum afflicted with chronic mania, a serious form of insanity, and at times violent, profane and obscene.

" The physician testifies that at the time of her admission she was in fair physicial condition, and that in 1891 (the time of application for insurance) she was eating and sleeping well except when she had periods of mental disturbance.

" Both parties have, by withdrawing the case from the jury, treated this question as one of law, and the proposition, therefore, is, ' Can the court determine as a question of law that an insane person is necessarily in unsound physical condition ? '

" No evidence has been given to show whether an insane person is considered among medical men as in an unsound condition of health, and the court possesses no expert knowledge which enables him to solve that question as one of fact. But obviously mere mental aberration will not necessarily constitute ill-health.

" To what extent mental disturbance will destroy or interfere with the functions of the body must depend upon circumstances of

·each case. It is a question of fact to be solved in each instance by the evidence.

"There is nothing before me that compels me to say that the mother was in unsound health, and as the burden of so proving rests upon the defendant, the decision, in the absence of proof, must be against it.

"Judgment for plaintiff for $73.97."

*John M. Gardner,* for the appellant.

*F. V. Sanford,* for the respondent.

PRATT, J.:

The opinion filed by the court below covers all the questions and renders further discussion unnecessary.

The judgment must be affirmed, with costs.

CULLEN and DYKMAN, JJ., concurred.

Judgment affirmed.

---

FRANKLIN P. ROBERGE, Respondent, *v.* MARIA N. WINNE and Another, Appellants.

*Judgment — amendment only on notice — change of an equity judgment into a judgment at law.*

Assuming that a final decree can be altered or amended, although it does not contain a provision for the making of an application for such purpose, an alteration or amendment thereto cannot be made except on due notice.

An equity judgment decreeing the execution and delivery of a bond and mortgage cannot, by a provision in an order denying a motion for a stay, be, in effect, turned into a judgment at law for a sum of money by granting leave to issue execution for the sale of the land to satisfy the judgment.

APPEAL by the defendants, Maria N. Winne and Elizabeth Cavannah, from an order of the Supreme Court, made at the Westchester County Special Term and entered in the office of the clerk of the county of Westchester on the 17th day of June, 1893, denying the defendant's motion to declare void a certain certificate of sale and for other relief, and also from that portion of an order of the Supreme Court, made at the Westchester County Special Term and